Jane McWhorter *v.* John T. Donald, Admr., &c.

JANE McWHORTER *v.* JOHN T. DONALD, Admr., &c.

|  |  |
|---|---|
| 39 | 779 |
| e81 | 672 |
| e81 | 673 |
| 39 | 779 |
| f87 | 270 |
| 39 | 779 |
| f94 | 678 |

1. EXECUTOR AND ADMINISTRATOR: PROBATE OF CLAIMS.—The probate of a claim against a decedent, if not made upon the affidavit of the creditor in the form required by law, is void, and is not therefore a sufficient voucher for its payment by the administrator.

2. SAME: SAME.—A party paying a debt due by a decedent in his lifetime cannot, without showing by independent proof that such payment was made at the request of decedent, probate the amount so paid in an account in his own favor by his own affidavit merely: he ought to have the affidavit of the original creditor that the claim is just and unpaid.

3. SAME: SAME.—The affidavit of a creditor of a decedent, to establish his claim for probate, must not only state that it is just and true, but also that it is unpaid, and that no security or satisfaction has been received therefor.

4. SAME: SAME.—It is essential to the validity of the probate of a claim against the decedent that the creditor himself should make the affidavit required by law; an affidavit made by other persons, and even by the husband of the creditor, will not do.

APPEAL from the Court of Probates of Leake county.   Hon. James A. Campbell, judge.

The appellant filed her petition in the court below against the appellee, to compel him to make a final account of his administration of the estate of John Adams, deceased.   The account was filed, and she excepted thereto on various grounds.

The third item of credit in said account was an account in favor of the administrator for $132.54.   The voucher to sustain this item was an open account in favor of the administrator against the intestate, which had been probated upon his making the ordinary creditor's affidavit prescribed in the statute.   In this account were charged the following items, among others:

| | | | |
|---|---|---|---|
| 1857, May 15, Amount paid | Drs. Galloway and Red, (bill) | | $15.00 |
| 1858, April 8, " | " Lewis | | 10.00 |
| " | " Shrock | | 5.00 |
| " | " Lloyd | | 20.75 |
| 1859, Jan. 10, " | account, J. M. Burnett | | 3.50 |

No proof was offered to show that these payments had been made at the request of the intestate.

Voucher No. 4 is as follows:

Capt. John Adams, deceased,

To John T. Donald     Dr.

| | |
|---|---|
| 1859, Sept. 22, Bill of burying clothes | $24.53 |
| Funeral expenses | 25.00 |
| | $49.53 |

This voucher was probated upon a like affidavit of the administrator, as was voucher No. 3.

Voucher No. 6 is as follows:

John Adams, deceased,

To John T. Donald     Dr.

1858, Jan. 27, Paid W. R. Luckett ................................................. $13.25

This voucher was probated upon a like affidavit of the administrator.

Voucher No. 10 is a medical account against intestate, in favor of Dr. Zollikoffer, for $55.50, which was probated upon the affidavit of Zollikoffer that it "was just and true," and without

stating that no part of it had been paid nor any security or satisfaction received therefor.

Voucher No. 5 was an account in favor of Mrs. Donald, wife of the administrator, against intestate, for five hundred dollars, "for services rendered Mrs. Adams and John Adams for three years, during their last illness." This account was probated upon an affidavit exactly in the terms prescribed by law, except that the affiants were John T. Donald, the administrator, and Edward Davis and Owen Sanders, Mrs. Donald not having sworn to it.

On the trial it was proven by a witness that Mrs. Donald was very kind and devoted to Adams and wife, and that her services to them were well worth five hundred dollars.

The appellant objected to the account because the administrator had not charged himself with the hire of a negro boy, John, belonging to intestate, from January, 1854, to October, 1860; and also because he had not charged himself with the hire of two other slaves, Ben and Lewis. The appellant stated, in her exception in reference to Ben and Lewis, that in 1850 an agreement was made between Adams and wife and the administrator and others, by which said Ben and Lewis were placed in possession of Adams and wife, to labor for them during their natural lives; and that in 1854 said John T. Donald took said slaves in his possession under an agreement that he would support said Adams and wife during their natural lives, and that he kept them in his possession until the death of said Adams and wife. That Donald, in the name of his wife, had charged in his final account Adams and wife for board and attendance from 1857 until their decease, and that he ought therefore to pay for the hire of the negroes.

The proof in relation to these exceptions was substantially as follows: Donald, the administrator, was the son of Mrs. Adams and stepson of the intestate; that Mrs. A. died in July, 1857, and the intestate in October, 1858; that in 1842 the intestate bought a tract of land and lived on it, and owned one slave, John, besides some two or three horses and some cattle; that about that time the children of Mrs. Adams by a former marriage (John T. Donald among them) sent Ben and Lewis to the old people to assist them in making a support; that in 1846 John T. Donald sent also a woman to help the old people; that said John T.

Donald resided in New Orleans till 1854, and frequently sent Adams and wife supplies, and generally stayed with his family at their house in the summer; that in 1854 John T. Donald moved on the place where Adams and wife resided; that Adams had been unable to pay for the land, and John T. Donald by his consent paid for it and took the title in his own name; that Adams and wife lived with Donald on the place till they died, as before stated; that after Donald went on the place, in 1854, Ben and John worked on his farm, (Lewis having been taken away in 1850;) that they waited on the old people a good deal, so much so that one of Donald's overseers complained at their loss of time from the field; that the time of these boys was worth from one hundred and seventy-five dollars to two hundred dollars per annum, and that Donald kept John until 1860.

The court passed the account as stated, and Mrs. McWhorter appealed.

*R. Reid,* for appellant.

*J. D. Eades,* for appellee.

HARRIS, J., delivered the opinion of the court:

The appellant filed her petition in the Probate Court of Leake county against the appellee as administrator of John Adams, deceased, for a final settlement of said estate. An account was filed and excepted to; and the judgment of the court, overruling appellant's exception, allowing the account as filed, and discharging the administrator, is the ground of error now assigned.

We shall only notice the grounds of exception which are well taken, and which should have been sustained.

The fourth ground of exception refers to voucher No. 3, which embraces a number of accounts and items (against decedent) paid by John T. Donald in his lifetime. The only proof of these accounts appearing in the record is a statement of the amount of each and when paid, and the oath of the administrator that *his* account thus made out is just and true, and no part thereof has been paid or any security or satisfaction given for the same. It nowhere appears that these items or accounts were paid for by

said Donald at the request of the said Adams, or that said Adams in any manner directly became the debtor of the said Donald, or recognized the validity of said debts against him, or the propriety of their payment *for him* by said Donald. The said Donald, therefore, by the payment of these accounts, only became the equitable transferee, and as against the estate of decedent is compelled to present each account itself, with every item, with the oath of the creditor, as required by the Code, indorsed thereon, with such proof as will satisfy the court that the *account* is just and true, and has not been secured or satisfied. To allow an assignee of an open account to pay the same, make a new account for money paid, and then by his own oath to probate *his* account as "just and true," &c.—in the terms of the statute—would be to annul the statute requiring strict proof of accounts against the estates of decedents, and open a wide door to the grossest frauds.

Exception No. 5, to voucher No. 4, presents the same question, and was also well taken.

Exception No. 6, to voucher No. 5, presents two questions: first, as to the form of probate; and, second, as to the validity of the claim under the proof in this record; and on both points the exception was well taken.

If the account was due to Mrs. Eliza M. Donald, the statute requires that *she* should probate it in the usual form, which is not done: *she* does not appear to have had any active agency in this transaction, and may be to this day wholly ignorant that *she* is made to charge her deceased mother and stepfather for services she voluntarily rendered them in their dying moments. For this very reason, among others, the statute requires the account itself, with the oath of the creditor indorsed thereon. It may be, and is even quite probable from her filial attention to her aged parents in their last moments, that no temptation could have seduced *her* to swear that this account of five hundred dollars against the estate of John Adams is *"just* and true;" and if the claimant of the account as it appears in the record does not so swear, or will not so swear, the statute intends that outsiders shall not volunteer to do it for her.

On the second question presented by this exception, it is clear from the proof in the cause that this claim is without the shadow

of foundation. It neither rests on contract nor finds the least sanction in any code of morals. It is unconscientious, and should not therefore be tolerated in a court of justice having power to reject it.

Exception No. 7, to voucher No. 6, and exception No. 9, to voucher No. 10, are both well taken; the first for the reasons stated on the fourth exception, and the last because Zollikoffer does not show in his verification that no part of the money stated to be due, nor any security or satisfaction for the same, has been received, &c., as required by the statute.

The refusal of the court to require the administrator to charge himself with the hire of certain negroes, stated in the proof to have belonged to or been in the possession of Adams in his lifetime, and used by Donald on his farm for several years before the death of Adams and even after his death, was clearly error, as the case is presented by the proofs in this record.

Let the decree be reversed and cause remanded for a final account and settlement and other proceedings in accordance with this opinion.