WELLS ET AL. v. McCOLLOUGH ET AL.

[74 South. 289, Division B.]

1. EXECUTORS AND ADMINISTRATORS.  *Claim against estate.  Presentation.  "Written evidence."*

Under Code 1906, section 2106, requiring one desiring to probate a claim against an estate to present the written evidence thereof, where a proponent of a claim against the estate of her deceased husband presented a joint and several note of herself and her deceased husband to which was attached the payee's receipt of payment in full by proponent, this was "written evidence" on its face of her claim for one-half of the payment, as showing her payment of the debt of her husband and as to the other half it was evidence that she had paid her own obligation.

2. EXECUTORS AND ADMINISTRATORS.  *Joint and several note.  Evidence.*

Evidence on exceptions filed by heirs to the allowance of the probated claim of the widow and administratrix to which was attached the payee's receipt in full from proponent, on a joint and several note of proponent and her deceased husband, wherein proponent contended that her husband had given her the land for which the note was given to reimburse her for moneys belonging to her separate estate, was *held* by the court to show that the husband intended to execute the note as a comaker, and to become jointly obligated with his wife for the full amount of the note.

3. SAME.

In the establishment of such a claim against the estate of deceased the testimony of the proponent was not admissible.

4. EXECUTORS AND ADMINISTRATORS.  *Presentations of claim.  Statutes.*

Where a husband and wife executed a joint and several note and the wife after her husband's death, paid the note in full and took a receipt and presented the whole note for probate and allowance against the estate of her deceased husband, the one-half of said note representing her primary obligation could not be probated by simply filing the cancelled note, but this part of her claim would necessitate an inquiry into the facts and as to this part of the claim there should have been a statement of the claim in writing signed by the creditor as prescribed by Code 1906, section 2106.

113 Miss.—26

APPEAL from the chancery court of Calhoun county. HON. J. G. McGOWEN, Chancellor.

Exceptions by W. B. Wells and others against T. P. McCollough and others, administrators, to the allowance of a probate claim of Mrs. C. G. Wells, widow and administratrix of J. C. Wells deceased. From an order allowing the claim, appellants appeal.

Appellants are the heirs at law of J. C. Wells, deceased, and the present contest arises over exceptions filed by them to the allowance of the probated claim of Mrs. Cannie G. Wells, the widow of J. C. Wells, deceased, and the administratrix of his estate. It appears that Mr. Wells in his lifetime negotiated for and purchased certain real estate from a Mr. Brooks. There was no cash consideration paid for the land, but the amount of the consideration, to wit, one thousand one hundred and thirty-three dollars, was furnished by Scott Hardin. Brooks, at the request of J. C. Wells, executed the deed to Mrs. C. G. Wells. Hardin, in furnishing the money, accepted the joint and several note of Mrs. C. G. and J. C. Wells in the sum of one thousand, one hundred and thirty-three dollars and took a deed of trust on the land to secure the note. The note was dated December, 1910, due one day after date, payable to the order of Scott Hardin or bearer, and stipulated upon its face that it was given for the purchase price of the lands therein properly described. In executing the note Mrs. Wells signed first and J. C. Wells then joined her as comaker. Before the note was paid Mr. Wells died. Thereupon Mrs. Wells was appointed administratrix in connection with her coadministrator, T. P. McCullough. Scott Hardin did not probate this note against the Wells estate, but on August 11, 1911, after the death of J. C. Wells, Mrs. C. G. Wells paid the full amount of the note and the payment was evidenced by the following receipt written upon the back of the paid note:

"$1,133.00.  Wardwell, Miss., Aug. 11, 1911.

"Received on the within note of Mrs. C. G. Wells, the sum of eleven hundred thirty-three and 00/100 dollars, in full payment of this note  Scott Hardin."

She thereafter attached the canceled note, with the receipt indorsed on the back thereof, to the usual affidavit of probate, and presented her claim against the estate of J. C. Wells, deceased, for the full amount of the one thousand, one hundred and thirty-three dollars and the chancery clerk accepted and probated the claim for this amount. Appellants then objected to the allowance of this claim, and upon the hearing before the chancellor certain evidence was introduced *pro* and *con*. The written exceptions charged that the debt is not a just claim against the estate, but the individual debt of Mrs. Wells; that the only party who could have probated this note was Scott Hardin; that the note was never transferred by Scott Hardin to Mrs. Wells, was never probated by Scott Hardin, and the same now is not evidence of any claim of Mrs Wells. On the hearing objections of appellants were directed both to the form of the probate and to the sufficiency of the testimony. Mrs Wells was introduced as a witness in her own behalf, and testified briefly over the objections of appellants. Mr. T. L. Hollis, half-brother of Mrs. Wells, testified to certain declarations or admissions by Mr. Wells in his lifetime to the effect that he bought the land to reimburse his wife for certain lands which she had owned and which Mr. Wells had sold, amounting in value to two hundred and fifty dollars, and also to reimburse her for rents which Mr. Wells had collected for his wife for five or six years or from 1902 to about 1907 or 1908. Mr. Hardin was also introduced, and testified that Mr. Wells negotiated for and made the agreement about executing the note and deed of trust, and also testified to a statement by Mr. Wells that he had some young stock he intended to sell and from the proceeds of the sale to pay the note. Mr. Hardin further testified that he had held an old mortgage on the place,

which he surrendered when Mr. Brooks deeded the land to Mrs. Wells, and thereupon took a new note and mortgage. He also testified to Mrs. Well's paying the note in accordance with the receipt executed on the back. The deed to the land was introduced, and shows a consideration of one thousand, seventy dollars and fifty cents and the usual warranty provisions. This was all the evidence to support the claim of Mrs. Wells. There was evidence in defense which it is unnecessary to detail. The chancellor allowed the full amount of the claim, and from his decree appellants appeal.

*Thomas D. Haman, Jr.,* for appellant.

A receipt is not an assignment. If Mrs. Wells has proved by her testimony that the note in question was, as between the makers, primarily the debt or evidenced such debt of J. C. Wells, and that she was only a surety, then at the time she probated, if she did not present to the clerk with affidavit as required, any written evidence of a claim against said estate due her, any itemized account of such claim or any statement of such claim in writing, signed by her.

I take it that the evidence of the debt required by the statutes means such evidence as on its face indicates an indebtedness to the one claiming to be the creditor.

The writing evidences a debt due Scott Hardin. There is no written evidence that the one seeking to prove it was a surety. There is no written evidence of assignment to Mrs. Wells.

The receipt of Scott Hardin will not serve. Even if it would for a joint maker, it would not for a surety where there is no written evidence of suretyship on the claim as presented. There was no itemized account. An account requires an indication on it of who it creditor and who debtor.

Aside from the fact that Mrs. Wells is affiant, there is nothing to indicate that she held a claim against J. C.

Wells or his estate. There was no statement by the creditor to indicate debtor and creditor.

We question whether an assignee taking after the death of a person can probate a claim based on a note payable as this one. If she was a surety, we think her claim arose after the death of J. C. Wells. As a surety only in equity she could have compelled the creditor to first probate his claim against her husband's estate.

If it is claimed that Mrs. Wells was neither a joint debtor nor a surety and that her claim arose because J. C. Wells intended to make the debt his own individually in discharge of a former indebtedness he owned Mrs. Wells, then we submit:

First, the old debt to Mrs. Wells being discharged she could not probate that, as she has not attempted to do.

Second, there was no new debt to her created, but to Scott Hardin secured by a lien on the land of Mrs. Wells. She could not probate.

Third, she does not offer proof that she was compelled to pay it to save her land. In fact, she did not have to pay it without having Scott Hardin first probate it against the estate.

Fourth, if she paid the debt of the Estate to save her land, either her claim arose after the death of deceased and so could not be probated or if subject to probate, the original note to Scott Hardin, on its fact a joint note, together with the receipt of Scott Hardin of payment by her is not the written evidence of the claim required by the statute because an essential link in the chain of evidence necessary to establish the claim of the affidavit as her claim is missing from the written evidence, nor does it constitute an itemized account of her claim against the estate. This is evident from the fact that it requires further evidence to identify the claim as her claim.

Aside from all this, Mrs. Wells, in our opinion, failed to prove any original indebtedness due her from deceased on which to base her claim that his intention was to give her the land or assume the debt to Scott Hardin as his

own in payment of such original indebtedness to her which, if a fact was probably inadmissible, on account of the statute of frauds, and if admissible a part of the written evidence necessary to be presented to the clerk with her affidavit for the valid probate of her claim.

She failed to prove any definite amount.

We think also that the payment and the taking of the receipt by Mrs. Wells for the money paid to Scott Hardin by her on her note given for land conveyed to her exclusively, constituted an act by which she conclusively admitted the debts evidenced by the note as hers, and only hers.

*Creekmore & Stone,* for appellees.

The sole question in this case is whether under the circumstances disclosed Mrs. Wells had a provable claim against the estate of J. C. Wells, and, if so, was it properly probated? It is argued by appellants, in their brief that the written evidence of a claim if any shall be presented to the clerk when probate is sought, and that affidavit as prescribed by statute shall be made by the creditor. And it is further insisted that an evidence of debt required by the statute means such evidence as on its face indicates an indebtedness to the one claiming to be the creditor.

We respectfully insist that the note and receipt of Scott Hardin showing payment thereof by Mrs. C. G. Wells meets the requirements of the statute requiring the claimant to present the written evidence of his claim. It will be borne in mind that this note was payable to bearer and that mere possession thereof *prima facie* showed ownership of the note by the holder and that such holder was entitled to receive payment therefor. Appellants in their brief cite section 3732 of the Code providing that when a surety has paid money on an obligation of his principle that the holder of the obligation shall assign such obligation in writing to the surety paying the money and that

thereupon such assignee may proceed in his own name against the principal debtor. It does not seem to us that this statute could possibly have such application as to prevent a surety, who had paid to a creditor the amount due on paper payable to bearer, having a right of action in his own name unless the assignment was in writing. One not a surety could take bearer paper without a written assignment and sue on it in his own name and surely a surety would not be placed in a less advantageous position than a stranger.

The only complaint made by the appellants is that since Scott Hardin did not assign the note in writing to the appellee she had no provable claim. The probate was in regular form and we insist that this technical attack is not justified by the law.

It is also argued by the appellants that the note on its face showed a joint debt and that the appellee was entitled to contribution from the estate of J. B. Wells, deceased, when she paid the whole amount due, and apparently conceded that she was entitled to one-half of the debt. Conceding this, however, the appellants still argue that nothing should be paid Mrs. Wells on this claim because no itemized statement of the amount due the paying debtor was filed and they say that this prevents her from being allowed anything on this claim unless the law conclusively presumes that each debtor as between themselves, owes an equal proportion of the debt. We confidently assert that the presumption, in the absence of evidence, is that co-makers of a note are bound for equal proportions thereof. And if this be true, the concession made by the appellants in their brief would entitled the appellee at least to one-half of the claim.

However, the proof shows that this note was a debt of J. C. Wells, and that his wife was only a surety, who signed for conformity because property which had been conveyed to her was being mortgaged to secure the payment of the note.

The appellee does not stand in the attitude of a volunteer or one who without being requested by the debtor had voluntarily paid the creditor.

She being a surety and having paid the amount due by the principal was subrogated to the rights of the creditor and could probate the claim and collect it.

Where an executor or administrator pays a debt or other just charge against the estate of his intestate, out of his private funds, he shall be entitled to an allowance for the same in his administration account, and in case the estate has been distributed he can enforce the same against the heirs and distributees. *Woods* v. *Ridley,* 27 Miss. 119; *Short* v. *Porter,* 44 Miss. 535. The decree of the lower court is correct, and we respectfully submit, should be affirmed.

STEVENS, J., delivered the opinion of the court.

(After stating the facts as above). This record presents a rather unique contest. Counsel do not direct our attention to any adjudicated case of our own court exactly similar. It is argued by counsel for appellants that the paid or canceled note here probated is not the written evidence of Mrs. C. G. Wells' claim, if any she has, and that therefore the probate is defective and not within the terms of our statute; section 2106 of the Code directing how claims shall be probated. It is contended that the canceled note is not the "written evidence," and that the claimant filed no itemized account or statement of the claim in writing signed by her, as required by the statute. What constitutes the written evidence of a claim was discussed by this court in *Lehman* v. *Powe,* 95 Miss. 446, 49 So. 622. In that case certain canceled checks were attempted to be probated as the written evidence of the claim. Judge SMITH, in speaking for the court, said:

"The words 'written evidence,' as used in the statute, clearly mean such a writing as by its terms or on its face evidences the fact that a liability exists on the part of the estate in favor of the claimant."

In another part of the opinion it is said:

"These canceled checks disclose no liability at all on the part of the estate to any one. . . . They could have been used, it is true, as evidence in a suit for money loaned, if in fact they related to such a transaction, but only as one link in the evidence necessary to maintain such a suit."

In the instant case the promissory note evidenced the joint and several obligation of Mr. and Mrs. Wells to Scott Hardin. The note upon its face discloses at best an obligation that presumably should be paid by the makers. jointly; that is to say, one-half by Mrs. Wells and one-half by J. C. Wells. When Mrs. Wells then paid the note in full, as evidenced by the receipt on the back of the note, the entire document as then canceled, without evidence to the contrary, indicated that she had paid the full amount of the joint undertaking and, to the extent of one-half, had paid the debt of her husband. In making this payment Mrs. Wells was privileged to have the note transferred to her by Scott Hardin, the holder thereof. If the note had been transferred or assigned to Mrs. Wells, she could, so far as the face of the paper discloses, have maintained an action against her husband for his portion of the obligation. Instead of taking a written assignment she elects to have Scott Hardin execute a receipt in full on the back of the document itself, and we think, therefore, that when she presented the canceled note for probate the writing should, in equity, be regarded as evidencing on its face claim for one-half of the payment, but no more. So far as the writing itself indicated, Mrs. Wells, as to one-half, simply paid her own obligation. As to the other half it evidenced the fact that she had paid the obligation of her husband, and this under circumstances over which she did not have full control. As a comaker she could have been compelled to pay the full amount of the note. Without compulsion she elected to pay the full amount and then to demand reimbursement from her comaker. So much for one-half of the claim as evidenced by the writing itself.

But it was the theory of the claimant that her husband had given her the land which he purchased to reimburse her for moneys which constituted her separate estate and which her husband had appropriated. The rents which the witness Hollis says Mr. Wells received from the lands of his wife could not, under section 2520 of the Code, be recovered, and the representatives of Mr. Wells in this proceeding could not be made to account for these rents. The evidence shows that these rents were collected some years prior to the death of Mr. Wells. The evidence is insufficient to show that Mr. Wells in fact sold any lands of his wife and appropriated the proceeds. At best the evidence shows an intention to place the title of the land purchased in Mrs. Wells and the further possible intention of Mr. Wells himself to pay the full amount of the note in question. He succeeded in having the title fully placed in his wife, but his expressed intention of paying the note was never in fact executed, and for all the court knows Mr. Wells might have changed his opinion or purpose to pay the note. In fact the only admission shown to have been made by Mr. Wells was a declaration that he intended to sell some young stock and from this source to pay the note. It is not shown that he intended to pay the note absolutely regardless of whether he consummated the sale of his young stock. There is no evidence that he sold the stock referred to, or that he attempted to execute his declared purpose. If he intended to give his wife the proceeds of this note, he never in fact completed the gift, and there is no evidence sufficient to characterize Mrs. Wells as a mere surety on the note. On the contrary, the deed for which the note was given was made to her, her signature comes first upon the note, and the transaction as a whole comes nearer placing her as principal than as surety. At the same time there is no evidence that sufficiently places J. C. Wells as a mere surety on the note. It seems clear to us that he intended to execute the note as a comaker and to become obligated with his wife for the full amount. As stated, the parties

are joint and several debtors. The testimony of Mrs. Wells was incompetent.

We conclude that as to one-half of the amount of this paid note, the canceled note itself, with the receipt indorsed on the back thereof, is the written evidence of that much of her claim, and to that extent is a sufficient compliance with the statute; that under the facts it was not error to allow this one-half, but the allowance of the full amount was erroneous; that the one-half representing the primary obligation of Mrs. Wells could not be probated by simply filing the canceled note, but a demand for this additional one-half would necessitate an inquiry into facts, and therefore, as to this demand, there should have been a statement of the claim in writing signed by the creditor. We are further of the opinion that under the proof the claim should be reduced one-half. The decree of the lower court will be reversed, and the cause remanded, with directions to reduce the amount of the probated claim one-half.

*Reversed and remanded.*

ETHRIDGE, J.—I concur in the conclusion that this case should be reversed and remanded, and concur in the conclusion that Mrs. C. G. Wells and her husband are jointly liable to Scott Hardin on the note, and that the relation of surety and principal did not exist as between them, and I concur in the conclusion that Mrs. Wells is entitled to have one-half of the sum allowed against her deceased husband, she having paid the entire note.

In my opinion, however, Scott Hardin should have made the affidavit and probated the claim. At the time of the death of the decedent, Scott Hardin was the creditor, and at that time the husband did not owe the wife the money in question. Section 2106 prescribes how claims against the estate of deceased persons should be probated; and the decisions heretofore have required a strict compliance with this statute. See *McWhorter* v. *Donald,* 39 Miss. 779, 80 Am. Dec. 97; *Cheairs* v. *Cheairs,* 81 Miss. 662, 33 So. 414.

I think the writing on the back of the note was a sufficient statement of the claim under the statute. But the satute requires that an affidavit shall be attached thereto to the following effect, viz:

"That the claim is just, correct, and owing from the deceased; that it is not usurious, and that neither the affiant nor any other person has received payment in whole or in part thereof, except such as is credited thereon, if any and that security has not been received therefor, except as stated, if any. Thereupon, if the clerk shall approve, he shall indorse upon the claim the words following," etc.

It is manifest, to my mind, that the purpose of this statute was to have the person who held the claim at the time of the death to make the affidavit because he alone would know whether it had been paid in whole or in part, and in most cases he alone would know whether it was usurious, etc.

It is suggested that a creditor whose claim was secured, as in the present case, might refuse to probate his claim and look to the other joint maker and property for payment. If such be the case, the surviving debtor could file a bill or petition in the court where the estate was administered, setting forth the facts, and asking for permission to pay off the claim because of the peculiar facts stated. It seems to me that the surviving joint debtor could tender payment and demand the creditor to make affidavit before paying the money, and demand that he probate the claim against the estate of the deceased joint maker, and if the creditor refused to take appropriate steps to protect his claim against the deceased, that the surviving joint debtor could maintain a proceeding in the chancery court to protect his rights under this condition. However that may be, I am of the opinion that the estate of the deceased cannot be charged except by pursuing the statute, and, in my judgment, the majority opinion will invite dealings with the estate of decedents which this court will repudiate when they arise. It will en-

courage executors and administrators to pay claims and get assignments to themselves and filing probate proceedings that will be subversive of the policy above referred to. The creditor who could not truthfully make the affidavit could circumvent the statute by the simple expedient of assiging the claim to some other person.